1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                          DISTRICT OF OREGON

9                          PORTLAND DIVISION

10

11

12   ADI FAIRBANK,                    Case No. 3:13-cv-00397-HU

13          Plaintiff,            **FINDINGS AND RECOMMENDATION**

14       v.

15   JAMES A. UNDERWOOD and EDDIE
     MEDINA,

16
            Defendants.
17   ——————————————————————

18   Adi Fairbank
     Email: adi@peacearms.org
19   5023 SE Kelly Street
     Portland, OR 97206
20   Telephone: (503) 777-1095

21       Pro Se Plaintiff

22   Frank H. Lagesen
     Email: flagesen@cosgravelaw.com
23   Shane P. Swiley
     Email: swiley@cosgravelaw.com
24   COSGRAVE VERGEER KESTER LLP
     888 SW Fifth Avenue, Suite 500
25   Portland, OR 97204
     Telephone: (503) 323-9000
26   Facsimile (503) 323-9019

27       Attorneys for Defendants

28

     Page 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

In this fair debt collection practices action, Defendants James Underwood ("Underwood") and Eddie Medina ("Medina") (collectively "Defendants") move, pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(5) and 12(b)(6), to dismiss Plaintiff Adi Fairbank's ("Plaintiff") complaint for insufficient service of process and failure to state a claim upon which relief can be granted.  Defendants also move for the imposition of Rule 11 sanctions.  For the reasons that follow, Defendants' motion (Docket No. 2) to dismiss should be granted in part and denied in part and Defendants' motion (Docket No. 10) for Rule 11 sanctions should be denied.

## I. FACTS AND PROCEDURAL HISTORY

As a preliminary matter, Defendants have asked the Court to take judicial notice of court filings from a Multnomah County Circuit Court proceeding involving the parties, as well as an arbitration award stemming from that proceeding.  Judge Hernandez took judicial notice of the same documents in dismissing a very similar action Plaintiff brought against Citibank (South Dakota), N.A. ("Citibank"), Nancy A. Smith & Associates ("NSA"), and Underwood.  *See Fairbank v. Citibank (South Dakota), N.A.*, No. 3:12-cv-00864-HZ, 2012 WL 6154759, at *1 n.1 (D. Or. Dec. 11, 2012) (*Fairbank I*).  This Court will do the same.  Because the documents are matters of public record, and because their authenticity cannot be questioned, Defendants' request for judicial notice should be granted.

On April 27, 2011, after Plaintiff defaulted on his credit card, Citibank filed a collection action against him in

Page 2 - FINDINGS AND RECOMMENDATION

Multnomah County Circuit Court.  The next month, Plaintiff filed a motion to stay the action pending arbitration, which was subsequently granted on June 30, 2011.

Soon thereafter, Plaintiff proceeded to attempt to initiate arbitration with Judicial Arbitration, Mediation and ADR Services ("JAMS"), but failed to pay the requisite filing fee. Citibank then commenced arbitration with the American Arbitration Association ("AAA"), but Plaintiff "did not participate despite being properly notified of the hearing." (Defs.' Req. Judicial Notice, Ex. C at 5.)  Citibank was represented in Multnomah County Circuit Court proceeding and AAA arbitration by Defendants, who were working for NSA at the time.[1]

On March 26, 2012, Citibank obtained an arbitration award in its favor.  In the months that followed, Plaintiff moved to vacate the arbitration award, a hearing was held on the motion to vacate, which was ultimately denied, and the state court entered judgment in favor of Citibank.

On May 16, 2012, two months before the state court filed its opinion and order, Plaintiff filed an action in federal court against Citibank, NSA, and Underwood (collectively, "the *Fairbank I* defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, and

---

[1] The record suggests that Medina may have only appeared on behalf of Citibank at one hearing, where he argued for the confirmation of the arbitration award.

Page 3 - FINDINGS AND RECOMMENDATION

§ 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.[2]  The so-called FAA claim was alleged against all of the *Fairbank I* defendants, the FDCPA claim was alleged against NSA and Underwood, and the FCRA claim was alleged against Citibank.

Importantly, paragraphs one, four and five of the *Fairbank I* complaint provided as follows:

> 1.   Plaintiff brings this complaint to seek relief for violations of 15 U.S.C. § 1692 ('FDCPA'), and 15 U.S.C. § 1681 ('FCRA').
>
> . . . .
>
> 4.   At this time, Plaintiff is not asking this Court to award damages on the claims contained herein. Rather, Plaintiff asks this court to compel Defendants to arbitrate these claims according to the terms of the pre-dispute arbitration agreement, pursuant to 9 U.S.C. § 4.
>
> 5.   Should some of the Defendants named in this complaint be ruled in the arbitration as not a party to the pre-dispute arbitration clause, Plaintiff will ask this Court to award damages on those claims.

Complaint at 1-2, Fairbank v. Citibank, No. 12-864 (D. Or. May 16, 2012).

On August 30, 2012, the *Fairbank I* defendants moved to dismiss the complaint for failure to state a claim.  In their moving papers, NSA and Underwood argued that Plaintiff's FDCPA claim was barred by claim and issue preclusion in light of the arbitration that occurred, and award that was confirmed, in the

---

[2]   The Court takes notice of filings from the *Fairbank I* proceeding, even though the parties have not specifically asked the Court do so.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that judicial notice of court filings and other matters of public record is proper); FED. R. EVID. 201(c)(2) (explaining that a court may take judicial notice on its own).

Page 4 - FINDINGS AND RECOMMENDATION

Multnomah County Circuit Court proceeding after *Fairbank I* was filed. NSA and Underwood also asserted that some of the statements and actions taken by Underwood, which Plaintiff alleged violated the FDCPA, were actually true and/or permitted under applicable law.

On October 5, 2012, Plaintiff filed a response to NSA and Underwood's motion to dismiss, wherein he stated (1) "Defendants' arguments on the invalidity of Plaintiff's claims, to be decided in JAMS arbitration, are not properly decided by this court at this time. Plaintiff listed these claims merely to show that this court had jurisdiction to compel arbitration under 9 U.S.C. § 4"; (2) "Plaintiff merely asks this court to compel Defendants to arbitrate his claims against them (listed in the complaint merely to show this court's jurisdiction) in JAMS, according to the arbitration agreement"; and (3) "Plaintiff believes [the validity of his FDCPA and FCRA claims] should be decided by the JAMS arbitrator, and need not be argued here." Objection Mot. Dismiss at 2-5, Fairbank v. Citibank, No. 12-864 (D. Or. Oct. 5, 2012). However, on page five of his response brief, Plaintiff also stated: "Plaintiff is merely asking that his claims be heard in some forum, for the first time." *Id.* at 5.

On December 11, 2012, Judge Hernandez filed an Opinion and Order dismissing *Fairbank I* without leave to amend.[3] *See generally Lopez v.* Smith, 203 F.3d 1122, 1130 (9th Cir. 2000)

---

[3] It does not appears that oral argument was held on NSA and Underwood's motion to dismiss.

Page 5 - FINDINGS AND RECOMMENDATION

("[W]e have repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, *unless it determines that the pleading could not possibly be cured by the allegation of other facts*.'") (citation omitted) (emphasis added). Notably, based on the statements quoted above at page 5, lines 5-15 from Plaintiff's response brief, Judge Hernandez construed Plaintiff's complaint as only asserting a single claim for violation of the FAA. *Fairbank*, 2012 WL 6154759, at *2. That opinion does not mention paragraphs 1, 4 and 5 of the complaint in *Fairbank I* the Court quoted above at page 4, lines 7-14, nor the statement at page 5 of the response of Plaintiff quoted above at page 5, lines 17-18.[4] Because NSA and Underwood were not parties to the credit card agreement (unlike Citibank), Judge Hernandez dismissed the *Fairbank I* complaint without leave to amend. *See id*. at *4 ("Plaintiff's complaint is dismissed because it *cannot be cured through amendment* to state a claim under [the FAA]") (emphasis added). Final judgment was entered the following day, December 12, 2012.

On March 8, 2013, Plaintiff brought the present action against Defendants, alleging a single cause of action for violation of the FDCPA. Every allegation in Plaintiff's complaint concerns actions taken by Defendants (on behalf of Citibank) during the Multnomah County Circuit Court proceeding and AAA arbitration.

---

[4] Unlike the present case, Judge Hernandez did not have the benefit of oral argument in order to better understand this pro se plaintiff's arguments.

Page 6 - FINDINGS AND RECOMMENDATION

On April 1, 2013 and April 23, 2013, respectively, Defendants filed their motion to dismiss and motion for imposition of Rule 11 sanctions, which are now before the Court.

///

///

///

## II. LEGAL STANDARD

### A.   Rule 12(b)(5)

When a defendant moves to dismiss for improper service pursuant to Rule 12(b)(5), "the plaintiff bears the burden of establishing the validity of service [under] Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006); *Neilson v. Beck*, No. CV-94-520-FR, 1994 WL 578465, at *3 (D. Or. Oct. 18, 1994) ("Once a party has challenged the sufficiency of process under Rule 12(b)(5), the party on whose behalf service is made has the burden of establishing its validity.")   The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion. *See Lachick v. McMonagle*, No. CIV. A. 97-7369, 1998 WL 800325, at *2 (E.D. Pa. Nov. 16, 1998) ("Factual contentions regarding the manner in which service was executed may be made through affidavits, depositions, and oral testimony.")

### B.   Rule 12(b)(6)

A court may dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  In considering a Rule 12(b)(6) motion to dismiss, the court must accept all of the claimant's material factual allegations as true and view all facts in the light most favorable to the

Page 7 - FINDINGS AND RECOMMENDATION

1  claimant. *Reynolds v. Giusto*, No. 08-CV-6261, 2009 WL 2523727,
2  at *1 (D. Or. Aug. 18, 2009). The Supreme Court addressed the
3  proper pleading standard under Rule 12(b)(6) in *Bell Atlantic*
4  *Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* established the
5  need to include facts sufficient in the pleadings to give proper
6  notice of the claim and its basis: "While a complaint attacked
7  [under] Rule 12(b)(6) . . . does not need detailed factual
8  allegations, a plaintiff's obligation to provide the grounds of
9  his entitlement to relief requires more than labels and
10  conclusions, and a formulaic recitation of the elements of a
11  cause of action will not do." *Id*. at 555 (brackets omitted).
12  Since *Twombly*, the Supreme Court has clarified that the
13  pleading standard announced therein is generally applicable to
14  cases governed by the Rules, not only to those cases involving
15  antitrust allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.
16  Ct. 1937, 1949 (2009). The *Iqbal* court explained that *Twombly*
17  was guided by two specific principles. First, although the
18  court must accept as true all facts asserted in a pleading, it
19  need not accept as true any legal conclusion set forth in a
20  pleading. *Id*. Second, the complaint must set forth facts
21  supporting a plausible claim for relief and not merely a
22  possible claim for relief. *Id*. The court instructed that
23  "[d]etermining whether a complaint states a plausible claim for
24  relief will . . . be a context-specific task that requires the
25  reviewing court to draw on its judicial experience and common
26  sense." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Iqbal v. Hasty*,
27  490 F.3d 143, 157-58 (2d Cir. 2007)). The court concluded:
28  "While legal conclusions can provide the framework of a

Page 8 - FINDINGS AND RECOMMENDATION

1   complaint, they must be supported by factual allegations.  When
2   there are well-pleaded factual allegations, a court should
3   assume their veracity and then determine whether they plausibly
4   give rise to an entitlement to relief." *Id*. at 1950.

5       The Ninth Circuit further explained the *Twombly-Iqbal*
6   standard in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir.
7   2009).   The *Moss* court reaffirmed the *Iqbal* holding that a
8   "claim has facial plausibility when the plaintiff pleads factual
9   content that allows the court to draw the reasonable inference
10  that the defendant is liable for the misconduct alleged." *Moss*,
11  572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1949).  The court
12  in *Moss* concluded by stating: "In sum, for a complaint to
13  survive a motion to dismiss, the non-conclusory factual content,
14  and reasonable inference from that content must be plausibly
15  suggestive of a claim entitling the plaintiff to relief." *Moss*,
16  572 F.3d at 969.

## III. DISCUSSION

17
18  **A.  Service of Process**

19      Defendants move to dismiss the complaint for insufficient
20  service of process.  "Defendants received a copy of the Summons
21  and Complaint via certified mailing to their place of business."
22  (Defs.' Mem. Supp. at 11.)  As Defendants go on to explain in
23  their reply brief, "to serve an individual by mailing requires
24  mailing the summons and complaint to the defendant both by first
25  class mail *and* by certified, registered or express mail."
26  (Defs.' Reply at 6) (emphasis added).

27      It is well settled that "[a] federal court does not have
28  jurisdiction over a defendant unless the defendant has been

Page 9 - FINDINGS AND RECOMMENDATION

served properly under Rule 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies*, Inc., 840 F.2d 685, 688 (9th Cir. 1988). Rule 4(e)(1) authorizes service on an individual in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1).

"Oregon law allows service on individual defendants by personal service or by substituted service as prescribed in the Oregon Rules of Civil Procedure." *Great Am. Ins. Co. v. Brillhard*, No. 08-CV-963-BR, 2009 WL 440203, at *2 (D. Or. Feb. 20, 2009). "[S]ubstituted service may be made . . . by mailing a copy of the summons and complaint to the defendant by first-class mail and by certified, registered, or express mail provided the defendant signs a receipt for the certified, registered, or express mail." *Id.* (emphasis added).

In *Davis Wright Tremaine, LLP v. Menken*, 181 Or. App. 332 (2002), for example, the plaintiff concurrently sent the complaint and summons to the defendant, Bobby Menken, "by both first-class mail and certified mail, return receipt requested." *Id.* at 338. As the Oregon Court of Appeals explained,

> [f]or such service on an individual to be presumptively valid, . . . the defendant must sign the receipt for the certified mailing. That did not happen here, and, consequently, plaintiff did not effect presumptively valid service on the defendant.
>
> The question thus narrows to whether the measures that plaintiff did take nevertheless constituted adequate service. . . . [Oregon Rule of Civil Procedure] 7 D(1) focuses not on the defendant's subjective notice but, instead, on whether the plaintiff's conduct was objectively, reasonably calculated to achieve the necessary end. That is,

Page 10 - FINDINGS AND RECOMMENDATION

> regardless of whether the defendant ever actually received notice, were the plaintiff's efforts to effect service reasonably calculated, under the totality of the circumstances then known to the plaintiff, to apprise the defendant of the pendency of the action?

*Id.* at 338-39.

In this case, Plaintiff sent the summons and complaint to Defendants, return receipt requested. (Pl.'s Opp'n Mot. Dismiss at 5-6) ("Plaintiff mailed copies of the Summons to Defendants via certified mail with return receipt requested.")  It does not appear that Plaintiff sent the summons and complaint by first-class mail, nor does it appear that either defendant signed the receipt for the certified mailing. (Summons Returned Executed [Docket No. 14] at 3.)  As such, Plaintiff did not effect presumptively valid service on Defendants.

Nevertheless, the Court concludes that Plaintiff's efforts to effect service were reasonably calculated, under the totality of the circumstances then known to him, to apprise Defendants of the pendency of the action.  Indeed, this court reached a very similar result in *Pergande v. Wood*, No. 6:12-cv-00690-TC, 2012 WL 4845555 (D. Or. Mar. 7, 2012).  In that case, the pro se plaintiff served the individual defendants by certified mail, and the defendants moved to dismiss, arguing, inter alia, that service of process was insufficient.  *Id.* at *1.  Despite recognizing that service may have been defective under the Oregon Rules of Civil Procedure, *see id.* at *1 n.2, Judge Coffin concluded that it was appropriate to decide the motion on the merits because (1) the defendants appeared and responded on the

Page 11 - FINDINGS AND RECOMMENDATION

1  merits, as is the case here; and (2) "any . . . defect could be
2  cured by amendment." *Id.*

3      Consistent with *Pergande*, the Court concludes that the
4  present motion should be decided on the merits. *See also Direct*
5  *Mail*, 840 F.2d at 688 ("Rule 4 is a flexible rule that should be
6  liberally construed so long as a party receives sufficient
7  notice of the complaint.") Accordingly, Defendants' motion to
8  dismiss should be denied on this ground.

9  ///
10  ///
11  ///
12  ///

13  **B.   Res Judicata**

14      Defendants argue that Plaintiff's FDCPA claim is barred by
15  the doctrine of res judicata.[5]  When addressing the preclusive
16  effect of a federal court judgment, which is what this Court is
17  being asked to do, federal courts are required to apply federal
18  res judicata rules. *See Sullivan v. First Affiliated Sec.,*
19  *Inc.*, 813 F.2d 1368, 1376 (9th Cir. 1987) (recognizing that the
20  res judicata impact of a federal judgment is a question of
21  federal law). Under federal law, "[r]es judicata, also known as
22  claim preclusion, bars litigation in a subsequent action of any
23  claims that were raised *or could have been raised* in the prior

24

25
───────────

26      [5] A district court may consider the affirmative defenses of
    claim or issue preclusion on a Rule 12(b)(6) motion to dismiss.
27  *Gens v. Colonial Savings, F.A.*, No. CV 11-05526, 2013 WL
    4730283, at *2 (N.D. Cal. Sept. 3, 2013); *Washington v. Akanno*,
28  No. 1:09-cv-00500-LJO-SAB, 2013 WL 3744200, at *1 (E.D. Cal.
    July 15, 2013).

action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (emphasis added). For the doctrine to apply, "there must be: (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between the parties." *Id.*

The second and third elements are clearly met. "Dismissal of an action with prejudice, or without leave to amend, is considered a final judgment on the merits." *Nnachi v. City of San Francisco*, No. C 10-00714 MEJ, 2010 WL 3398545, at *5 (N.D. Cal. Aug. 27, 2010), *aff'd*, 467 F. App'x 644 (9th Cir. 2012). Additionally, although Medina was not named as a defendant in *Fairbank I*, Medina is in privity with NSA and Citibank because (1) he was an employee of NSA who, along with Underwood, represented Citibank at the time of the events described in both of Plaintiff's complaints and thus had a close relationship with NSA, Citibank and Underwood; and (2) his interests are aligned with NSA and Citibank because their liability was predicated essentially upon a finding of wrongdoing by Medina and Underwood. *See Adams v. Cal. Dept. Of Health Serv.*, 487 F.3d 684, 691 (9th Cir. 2007) (applying, in a different context, test for claim preclusion and holding that "new employee-defendants" were in privity with employer based primarily on their "close relationship" with the employer and co-workers named as defendants in the first complaint and the fact that the employer's liability was predicated largely upon a finding of wrongdoing by its employees).

Page 13 - FINDINGS AND RECOMMENDATION

The question, then, is whether there is "an identity of claims." The Ninth Circuit considers four factors in evaluating whether there is an "identity of claims":

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012) (citation omitted). "The last of these criteria is the most important." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982).

Defendants fail to explain what rights or interests established in the *Fairbank I* would be destroyed or impaired by prosecution of this action, and this Court cannot conceive of one. *Fairbank I* established nothing more than the fact that Underwood and NSA were not parties to the credit card agreement that included the arbitration clause, and as a result, Plaintiff failed to state a claim under the FAA. This case does not present any question of whether Plaintiff can compel arbitration of any claim covered by a written and enforceable arbitration agreement.

Moreover, in light of the decision in *Fairbank I*, it is clear that Plaintiff's current suit presents a claim that is different from the construction Judge Hernandez gave the complaint in *Fairbank I*; in other words, the two suits do not involve the infringement of the same right. In *Fairbank I*, Judge Hernandez construed Plaintiff's complaint as only

Page 14 - FINDINGS AND RECOMMENDATION

"alleg[ing] that [Underwood, Citibank and NSA] failed to arbitrate with JAMS, [in] violation of 9 U.S.C. § 4." *Fairbank*, 2012 WL 6154759, at *3. In the present suit, Plaintiff alleges that the actions taken by Defendants (on behalf of Citibank) during the Multnomah County Circuit Court proceeding and AAA arbitration violated the FDCPA.

As to the fourth and most important factor of the "identity of claims" test—whether the separate legal claims arise from the "same transactional nucleus of facts"—the Ninth Circuit has explained that,

> in most res judicata cases, the inquiry about the 'same transactional nucleus of facts' is the same inquiry as whether the claim could have been brought in the previous action. If the harm arose at the same time, then there was no reason why the plaintiff could not have brought the claim in the first action. The plaintiff simply could have added a claim to the complaint. If the harm arose from different facts at a different time, however, then the plaintiff could not have brought the claim in the first action. Either way, the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action. In that context, it makes sense, when asking whether the claims involve the 'same transactional nucleus of facts,' to ask as a proxy whether the claims could have been brought in the original action.

*United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011).

Plaintiff's complaint sets forth seven specific alleged violations of the FDCPA, (Compl. ¶¶ 19-25), all of which were included verbatim in the *Fairbank I* complaint. (Complaint at 5-7, ¶¶ 30-36, Fairbank v. Citibank, No. 3:12-cv-00864-HZ (D. Or.

May 16, 2012).[6] It seems axiomatic, then, that Plaintiff could have brought his FDCPA claim in *Fairbank I*.[7] However, Judge Hernandez ultimately construed the *Fairbank I* complaint as only asserting a single claim for violation of the FAA. Ordinarily under these circumstances, the fourth factor would support a finding of res judicata. *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005) ("We have often held the common nucleus criterion to be outcome determinative under the first res judicata element.")

Nonetheless, for res judicata to preclude Plaintiff's FDCPA claim, he must have had a full and fair opportunity to litigate that claim in a judicial proceeding prior to this action. *See Liquidators*, 630 F.3d at 1151 ("[A] critical predicate for applying claim preclusion is that the claimant shall have had a fair opportunity to advance all its 'same transaction' claims in a single unitary proceeding"); *Performance Plus Fund, Ltd. v. Winfield & Co., Inc.*, 443 F. Supp. 1188, 1189 (C.D. Cal. 1977) ("[T]he party against whom res judicata is to operate must have

---

[6] As noted below, Plaintiff claims Medina violated the FDCPA by arguing for confirmation of the arbitration award in Multnomah County Circuit Court on June 11, 2012. This is Plaintiff's sole claim against Medina. Plaintiff argues that he could not have possibly raised his claim against Medina in *Fairbank I* because that conduct occurred almost a month after the original *Fairbank I* complaint was filed. The Court declines to consider Plaintiff's argument that at least one violation of the FDCPA alleged here could not have been brought in *Fairbank I* because the aforementioned claim against Medina was not in fact pled in *Fairbank II*, and for the reasons discussed in Part III.E., leave to amend *Fairbank II* would be futile.

[7] He in fact did bring FDCPA claims against the *Fairbank I* defendants.

Page 16 - FINDINGS AND RECOMMENDATION

had a fair and full opportunity to litigate."); *Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996) ("Findings made in one proceeding in which a party has had a full and fair opportunity to litigate may be used against that party in subsequent litigation.")

In the Court's view, Plaintiff did not have a full and fair opportunity to litigate his FDCPA claim in *Fairbank I*.  Of particular importance are the facts that the initial pro se complaint in *Fairbank I* was dismissed without leave to amend, and without oral argument, despite Plaintiff's request that "his claims be heard in some forum, for the first time," and request that the court award damages on his federal claims in the event any of the *Fairbank I* defendants were not party to arbitration clause.  "In federal court, pro se litigants are afforded liberal treatment in asserting their claims, especially with regard to formal requirements." *Galloway v. Nicola*, No. 1:11-cv-00269-REB, 2012 WL 2879311, at *2 (D. Idaho July 13, 2012) (citing *Lim v. INS*, 224 F.3d 929, 934 (9th Cir. 2000)).  From this alone it follows that Plaintiff's FDCPA claim should not be barred by the doctrine of res judicata.[8]

---

[8]    The Court notes that, in construing the *Fairbank I* complaint as only asserting a claim for violation of the FAA, Judge Hernandez may have divested the court of subject matter jurisdiction. *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106 (9th Cir. 2002) ("The FAA does not confer federal question jurisdiction under 28 U.S.C. § 1331.  Rather, there must be an independent basis for jurisdiction, such as diversity of citizenship under 28 U.S.C. § 1332."); *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 26 n.32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction.  It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent

Page 17 - FINDINGS AND RECOMMENDATION

## C.  Equitable Tolling

Defendants argue that the alleged violations of the FDCPA set forth in paragraphs nineteen through twenty-two of the complaint are untimely.  As Defendants point out, FDCPA claims are subject to a one-year statute of limitations, *Blue v. Bronson & Migliaccio*, No. CV-09-1213-HU, 2010 WL 4641666, at *3 (D. Or. Nov. 4, 2010) (citing 15 U.S.C. § 1692k(d)), and paragraphs nineteen through twenty-two concern actions that took place on or before February 21, 2012—a little over a year before Plaintiff filed the present action.

In paragraph twenty-six of his complaint, Plaintiff states: "The violations listed in paragraphs 19 through 22 would, at first glance, appear to be time-barred, per 15 U.S.C. § 1692k(d). However, they were listed in a prior complaint in this court (see Case no. 3:12-cv-00864-HZ) and therefore tolled for the duration of that case." (Compl. ¶ 26.)  In his opposition brief, however, Plaintiff "admits his lack of understanding of tolling law, and therefore acknowledges that some of the claims listed may be time-barred." (Pl.'s Opp'n Mot. Dismiss at 4.) Plaintiff included the allegations in paragraphs nineteen

---

federal-question jurisdiction under 28 U.S.C. § 1331 . . . or otherwise.")  Absent a federal question, there does not appear to be an independent basis for diversity jurisdiction in *Fairbank I*.

In any event, at least one Court of Appeals has recognized that the "defense of lack of subject-matter jurisdiction over [a] prior suit c[annot] . . . be raised to defeat [the] res judicata effect of the prior, final judgment." *United States v. Hartwell*, 448 F.3d 707, 722 (4th Cir. 2006) (Williams, J., concurring in part and concurring in judgment) (citing *Des Moines Navigation & R. Co. v. Iowa Homestead Co.*, 123 U.S. 552 (1887)).

through twenty-two "in the complaint for the court to decide on, in the event that tolling law did allow them to be brought." (Pl.'s Opp'n Mot. Dismiss at 4.)

Equitable tolling is applicable to the FDCPA, but it is extended "only sparingly" by courts. *Wilson v. Gordon & Wong Law Group, P.C.*, No. 2:13-CV-00609-MCE, 2013 WL 3242226, at *4 (E.D. Cal. June 20, 2013)*; Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Arvie v. Dodeka, LLC*, No. H-09-1076, 2010 WL 4312907, at *12 (S.D. Tex. Oct. 25, 2010) (explaining, in a FDCPA case, that equitable tolling may be appropriate where "the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.") The "absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

Paragraphs nineteen through twenty-two of Plaintiff's complaint concern alleged violations of the FDCPA that occurred between September 9, 2011 and February 22, 2012. Each of these allegations were timely-asserted in the *Fairbank I* complaint filed on May 16, 2012. Had Plaintiff received a full and fair opportunity to litigate his FDCPA claim in *Fairbank I*, he would not be facing a statute of limitations defense in this

Page 19 - FINDINGS AND RECOMMENDATION

proceeding.    The Court believes this justifies tolling the statute of limitations on the alleged violations of the FDCPA contained   in   paragraphs   nineteen   through   twenty-two   of Plaintiff's complaint.    Indeed, Plaintiff was diligent in providing timely notice to Defendants in *Fairbank I* and the interests of justice require that he not be barred from pursuing his claim.

**D.    Issue Preclusion**

Defendants   next   argue   that   the   "remaining"   alleged violations of the FDCPA—*e.g.*, paragraphs twenty-three through twenty-five of the complaint—"are attempts by [P]laintiff to relitigate issues previously considered and decided by the arbitrator and/or the state court during the prior Citibank arbitration against [P]laintiff."[9]    (Defs.' Mem. Supp. at 8.)

A "state court's confirmation of [an] arbitration award constitutes a judicial proceeding for purposes of [28 U.S.C. §] 1738, and thus must be given the full faith and credit it would receive under state law." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989), *cert. denied*, 493 U.S. 817 (1989). "To determine whether the requirements of issue preclusion have been satisfied, this court must look to the law of the state in question." *Id.*; *Houston v. City of Coquille*, 329 F. App'x 132,

---

[9] In their memorandum in support, Defendants made passing reference to the allegations in paragraphs nineteen through twenty-two being barred by issue preclusion as well.    However, Defendants failed to present any argument in support of this assertion.    The Court will therefore limit its analysis to Defendants' arguments regarding paragraphs twenty-three through twenty-five.

Page 20 - FINDINGS AND RECOMMENDATION

133 (9th Cir. 2009) ("The preclusive effect of a state court judgment in a federal proceeding is governed by state law").

Under Oregon law, the following elements are necessary to bar relitigation of an issue that has already been determined in a previous action:

(1) The issue in the two proceedings is identical;

(2) The issue was actually litigated and was essential to a final decision on the merits in the prior proceedings;

(3) The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

(4) The party sought to be precluded was a party or was in privity with a party to the prior proceeding; and

(5) The prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Stevens v. Horton*, 161 Or. App. 454, 461 (1999), *rev. denied*, 331 Or. 692 (2001).

The third, fourth, and fifth elements of issue preclusion are not seriously disputed. Plaintiff, the party sought to be precluded, was a party to the prior proceeding, and the rule in Oregon is "that issue preclusion principles may apply to matters decided in a prior arbitration as well as in a prior judicial proceeding."[10] *Westwood Const. Co. v. Hallmark Inns & Resorts, Inc.*, 182 Or. App. 624, 634 n.7 (2002), *rev. denied*, 335 Or. 42 (2002); *see also* OR. REV. STAT. § 36.715(1) ("Upon granting an order confirming . . . an [arbitration] award, the court shall

---

[10] There are exceptions to the general rule that issue preclusion principles may apply to matters decided in a prior arbitration, *see Shuler v. Distribution Trucking Co.*, 164 Or. App. 615, 624-25 (1999), but none appear applicable in this case and the parties do not argue otherwise.

enter a judgment in conformity with the order.  The judgment may be entered in the register and enforced as any other judgment in a civil action.")  Additionally, Plaintiff does not contend that he did not have a full and fair opportunity to be heard on any of the contested issues decided in the Multnomah County Circuit Court proceeding.  *See State Farm v. Century Home*, 275 Or. 97, 105 (1976) (party against whom preclusion is sought has the burden of demonstrating that he did not have full and fair opportunity to contest issue in the prior adjudication).

Consequently, the Court is left to decide whether the allegations in paragraphs twenty-three through twenty-five of Plaintiff's complaint satisfy the first and second elements of issue preclusion.

Paragraphs twenty-three through twenty-five of the complaint provide as follows:

> 23.  In an e-mail communication dated March 12, 2012, Underwood asserted that 'the issue of *the* effective arbitration agreement has been determined as a matter of law.' . . . [T]his was a false, deceptive, and misleading representation since the AAA arbitrator never made such a ruling — a violation of 15 U.S.C. § 1692e(10).

> 24.  In an e-mail communication addressed to AAA and [Plaintiff] dated March 26, 2012, Underwood asserted that the '2007 Agreement is the governing Agreement per [the arbitrator]'s [February 15, 2012] Order.'  Again, this was a false, deceptive, and misleading representation since the AAA arbitrator never made such a ruling — a violation of 15 U.S.C. § 1692e(10).

> 25.  On April 3, 2012, Underwood and [NSA], on behalf of Citibank, filed a petition in Multnomah County Circuit Court asking for an order confirming the arbitration award granted by the AAA arbitrator.  In light of Plaintiff's appeal of the AAA award, according to the terms of the arbitration agreement, the award was not 'final' and the act of petitioning a court for confirmation at that point was a breach of

1    contract. This constitutes an 'unfair or
2    unconscionable means to collect or attempt to collect'
     a debt — a violation of [the FDCPA] — and also a
3    'threat to take [an] action that cannot legally be
     taken' in an attempt to collect a debt — a violation
4    of [the FDCPA].

5    (Compl. ¶¶ 23-25) (emphasis added).

6        With respect to paragraph twenty-three, Defendants claim

7    that "the arbitrator and state court judge both determined there

8    was *an* effective arbitration agreement between [Plaintiff] and

9    Citibank." (Defs.' Mem. Supp. at 9) (emphasis added). In his

10   opposition brief, Plaintiff states:

11        This is true, but not what Plaintiff's claim here is
          about. Plaintiff is claiming in paragraph [twenty-
12        three] that Defendant Underwood made a false,
          deceptive, and misleading statement because he was
13        claiming that the issue of *which* arbitration agreement
          was governing (the 2007 one or the 2010 one) had been
14        decided by the arbitrator. The question of which of
          these arbitration agreements was governing was never
15        decided on by . . . the arbitrator []or the state
          court judge.

16   (Pl.'s Opp'n Mot. Dismiss at 4.) In other words, in paragraphs

17   twenty-three and twenty-four of the complaint, Plaintiff is

18   alleging that Underwood made the *same* false representation

19   requiring a decision about which arbitration agreement was

20   applicable, in violation of § 1692e(10), on two separate

21   occasions in March 2012.

22       With this clarification, the Court now turns to the

23   materials Defendants cite in support of their assertion that the

24   aforementioned paragraphs are merely attempts to relitigate

25   issues decided in the AAA arbitration and/or Multnomah County

26   Circuit Court proceeding. First, Defendants cite an Order of

27   Arbitration Respecting Jurisdictional Issues, which provides:

28

Page 23 - FINDINGS AND RECOMMENDATION

1     1.   Under a 2007 Credit Card Agreement between the
parties, disputes between the parties could be
2     resolved through arbitration with the [AAA] . . . or
the National Arbitration Foundation ('NAF'). The NAF
3     no longer provides consumer services. C[itibank]
contends that this Agreement governs the dispute at
4     hand.

5     2.   Despite [Fairbank]'s earlier acknowledgment in
writing to C[itibank] that the 2007 Agreement was
6     controlling, [Fairbank] contends that the dispute is
subject to a 2010 Credit Card Agreement, which stated
7     that disputes could be handled either with AAA or
[JAMS].

8

9     3.   [Fairbank] attempted to initiate an arbitration
proceeding through JAMS but did not forward the
10    required filing fee to JAMS despite repeated requests
until after [Citibank] had initiated an arbitration
proceeding through the AAA.

11

12    Based upon the foregoing, jurisdiction is properly
with the AAA, and this matter may proceed forward[] to
13    an arbitration hearing.

14  (Defs.' Req. Judicial Notice Ex. B at 1.)

15    Second, Defendants cite an order entered by Judge Matarazzo

16  on July 18, 2012, which granted Citibank's motion to confirm the

17  arbitration award and denied Plaintiff's motion to vacate the

18  award. In that order, Judge Matarazzo explicitly rejected

19  Plaintiff's claim that the arbitration award was not final:

20  "[Fairbank] is incorrect. Without seeking a fee waiver or

21  agreement from [Citibank] on how to allocate the [filing] fee

22  [for an appeal], [Fairbank] was responsible. [Since Fairbank

23  failed to pay the fee for an appeal], the award became final."

24  (Defs.' Req. Judicial Notice Ex. E at 2-3.)

25    **1.   Paragraphs Twenty-Three and Twenty-Four**

26    The Court concludes that the issue raised in paragraphs

27  twenty-three and twenty-four of the complaint is not barred by

28  issue preclusion. Defendants claim that, "in the Citibank

Page 24 - FINDINGS AND RECOMMENDATION

arbitration, the arbitrator considered and rejected Fairbank's argument that Citibank's 2010 Card Agreement, not the 2007 Agreement, applied." (Defs.' Mem. Supp. at 9-10) (citing *see* Defs.' Req. Judicial Notice Ex. B at 1)). But nowhere does that order address which agreement applied. Indeed, the order only concerns whether jurisdiction was properly with AAA and both agreements apparently stated that disputes could be resolved through arbitration with AAA, so there would have been no reason to make such a determination. Accordingly, Defendants' motion to dismiss should be denied on this ground.

**2.   Paragraph Twenty-Five**

As to paragraph twenty-five, the issue of whether the arbitration was final was litigated to finality in Multnomah County Circuit Court. Plaintiff concedes "[i]t is true that the state court judge confirmed the arbitration award over Plaintiff's argument that it was not final." (Pl's Opp'n Mot. Dismiss at 5.) Judge Matarazzo's order is quoted above. Contrary to Plaintiff's assertion, the fact that Plaintiff is currently appealing that ruling in state court does not delay issue preclusion from attaching to the trial court judgment. *See Ron Tonkin Gran Turismo v. Wakehouse Motors*, 46 Or. App. 199, 207 (explaining that, under Oregon law, a pending appeal does not affect the finality of a judgment for the purposes of claim or issue preclusion), *rev. denied*, 289 Or. 373 (1980). The Court will not revisit Plaintiff's argument that the award was not final and thus an "action that c[ould not] legally be

Page 25 - FINDINGS AND RECOMMENDATION

1  taken." (Compl. ¶ 25.) Defendants' motion to dismiss should be

2  granted with respect to paragraph twenty-five.[11]

3  **E.  FDCPA Claim Against Medina**

4  In his opposition to Defendants' motion to dismiss,

5  Plaintiff states that he "would like to clarify his claim

6  against Defendant Medina, since that was not made clear in the

7  complaint." (Pl.'s Opp'n Mot. Dismiss at 2.) Plaintiff goes on

8  to explain that his FDCPA claim against Medina is based on the

9  fact that, on June 11, 2012, Medina "argu[ed] for confirmation

10  of the arbitration award [in the Multnomah County Circuit Court

11  proceeding], with the knowledge that it had been appealed and

12  was not final according to the terms of the arbitration

13  agreement." (Pl.'s Opp'n Mot. Dismiss at 2.) Plaintiff also

14  "apologize[d] for not being more specific about his claim

15  against Defendant Medina" and "respectfully request[ed] leave to

16  amend the complaint." (Pl.'s Opp'n Mot. Dismiss at 5.)

17  As Plaintiff himself concedes, the aforementioned

18  allegation—which occurred on June 11, 2012 and which forms the

19  basis of Plaintiff's FDCPA against Medina—is not included in the

20  complaint.  He has therefore failed to state a claim against

21  Medina.  However, granting Plaintiff leave in order to allege

22  the claim described above against Medina would be inappropriate

23  because it is futile.  The same claim was made in paragraph

24  twenty-five of the complaint.  As discussed in Part III.D., the

25

26  _____

   [11] In light of the foregoing, the Court declines Defendants'
27  invitation to apply the *Rooker-Feldman* doctrine to this claim.
   *See generally Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir.
28  2010) (*Rooker-Feldman* doctrine prohibits lower federal courts
   from reviewing state court decisions).

1  issue of whether the arbitration award was final was litigated

2  to finality in Multnomah County Circuit Court.   All of the

3  elements of issue preclusion are met, and accordingly, Medina

4  should be dismissed from this action without leave to amend.

5  **F.   Rule 11 Sanctions**

6      Pursuant to Rule 11, Defendants move for an order requiring

7  Plaintiff to pay for the costs and attorneys' fees "incurred in

8  defending against this meritless action."   (Defs.' Mot.

9  Sanctions at 2.)   Plaintiff did not file an opposition to

10  Defendants' motion for sanctions, nor did he address the motion

11  in his opposition to Defendants' motion to dismiss.

12      "Among other grounds, a district court may impose Rule 11

13  sanctions if a paper filed with the court is for an improper

14  purpose, or if it is frivolous." *G.C. & K.B. Invs., Inc. v.*

15  *Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003) (citing Fed. R. Civ.

16  P. 11(b)(1)-(2)).   The standard governing "frivolous" filings,

17  a shorthand used by the Ninth Circuit "to denote a filing that

18  is both baseless and made without a reasonable and competent

19  inquiry," *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358,

20  1362 (9th Cir. 1990), is objective.  *Wilson*, 326 F.3d at 1109.

21  Courts do, however, take into account a plaintiff's pro se

22  status in determining whether the filing was frivolous.  *Warren*

23  *v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994).

24      In this case, the imposition of monetary sanctions is not

25  warranted.   The crux of Defendants' position seems to be that

26  "[h]ad Plaintiff conducted legal research before filing this

27  action, he would have learned his claims were barred by res

28  judicata and issue preclusion." (Defs.' Mem. Supp. Sanctions at

Page 27 - FINDINGS AND RECOMMENDATION

3.)  To quote the Sixth Circuit in *Chester v. St. Louis Housing Authority*, 873 F.2d 207 (8th Cir. 1989), "pro se status is particularly relevant in cases like the present one in which the defendant[s] [could arguably] prevail[] on grounds, such as res judicata, that involve procedural rules that are difficult even for experienced lawyers and judges to apply, much less lay persons." *Id.* at 209.  Accordingly, Defendants' motion for the imposition of Rule 11 sanctions should be denied.

**G.  Plaintiff's Sur-Reply**

While the Defendants' motion to dismiss was under advisement, Plaintiff filed a sur-reply reiterating and expanding on arguments previously made.  Three days later, Defendants moved to strike Plaintiff's sur-reply based on Plaintiff's failure to seek leave of court.  *See* LR 7-1(e)(1)-(3) (explaining that only a response and reply brief are permitted after a party files a Rule 12(b)(6) motion to dismiss, "[u]nless [otherwise] directed by the Court").

The Court agrees with Defendants that Plaintiff was required to request leave of court prior to filing his sur-reply. Because Plaintiff failed to do so, the Court recommends granting Defendants' motion to strike Plaintiff's sur-reply.[12]

### IV. CONCLUSION

For the reasons stated, Defendants' request (Docket No. 7) for judicial notice should be granted, Defendants' motion (Docket No. 2) to dismiss should be granted in part and denied

---

[12] The Court also notes nothing in the sur-reply would change any of the findings and recommendations contained herein.

1  in part, Defendants' motion (Docket No. 10) for the imposition
2  of Rule 11 sanctions should be denied, and Defendants' motion
3  (Docket No. 23) to strike Plaintiff's sur-reply should be
4  granted.

5                    **V. SCHEDULING ORDER**

6       The Findings and Recommendation will be referred to a
7  district judge.  Objections, if any, are due **December 2, 2013.**
8  If no objections are filed, then the Findings and Recommendation
9  will go under advisement on that date.  If objections are filed,
10 then a response is due **December 19, 2013.**  When the response is
11 due or filed, whichever date is earlier, the Findings and
12 Recommendation will go under advisement.

13      Dated this 12th day of November, 2013.

14                          /s/ Dennis J. Hubel

15                   _____
                              DENNIS J. HUBEL
16                     United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

Page 29 - FINDINGS AND RECOMMENDATION